IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID JONES                    :        CIVIL ACTION
                               :
        v.                     :
                               :
FOOD FOR ALL, INC., et al.     :        NO. 10-5555

MEMORANDUM

Dalzell, J.                                    July 11, 2011

        Plaintiff David Jones has sued his former employer,
Food for All, Inc., and his former supervisor, David Dobson
(collectively, "Food For All" or "defendants"), for employment
discrimination pursuant to 42 U.S.C. § 1981.  Specifically, he
claims that defendants retaliated against him for engaging in a
protected activity (Count I), discriminated against him based on
his race (Count II), and subjected him to a hostile work
environment (Count III).

        Defendants have moved for summary judgment, and Jones
has responded and included a Statement of Facts.  Defendants
contend that Jones cannot establish a prima facie case for his
claims and that they had a legitimate, nondiscriminatory reason
for terminating his employment.  Jones argues that defendants'
proffered reasons for firing him are pretextual.

        For the reasons we discuss in detail below, we will
deny defendants' motion.

I.   **Factual Background**[1]

Plaintiff David Jones is an African-American male who began working for defendants on June 15, 2009.  Compl. ¶ 11-12. Jones worked for defendants for about ten months.  <u>Id.</u> ¶ 13. Jones worked as a laborer and performed physical and manual tasks as requested.  <u>Id.</u> ¶ 14. Dobson fired Jones on April 8, 2010. <u>Id.</u> ¶ 16.  During Jones's employment, he was supervised by a Caucasian male named Daut Dahirai, who was also referred to as "David Tariq" or "Happy Hands."  Pl. Resp., Ex. N at 7-9.  Jones and other black employees were brought in to Food for All from a workforce development program, were pre-qualified for hire, and did not have to go through an interview process because Dobson agreed to hire them as part of the program.  <u>Id.</u>, Ex. L at 70-73.

When Dobson hired him, he told Jones that Jones would be reporting to Dahirai and that he should report any problems to Dahirai.  <u>Id.</u>, Ex. K at 32; see also Ex. B (Steve Faison, an employee of defendants, certifying that Dahirai was a supervisor); Ex. C (Ernest Sutton, an employee of defendants, certifying that Dahirai was a supervisor).  Dobson told Jones to do whatever Dahirai told him to do and to follow his orders. <u>Id.</u>, Ex. K at 55-56.

---

[1] We will recite the facts, supported by evidence, that are most favorable to the non-moving party.

Dahirai confirmed that over the last four years of employment with defendants he worked forty hours per week on average.  Id., Ex. N at 12-13.  Jones and other employees worked at multiple property locations where Dahirai supervised them.  Id., Ex. K at 60.  Dahirai sent Jones home at least twice when he was dissatisfied with Jones's work.  Id. at 126.  Dahirai testified that he could send employees home after getting permission from Dobson, and stated that he was personally responsible for reporting work progress to Dobson.  Id., Ex. N at 26-27.

According to Jones and his coworkers -- Steve Faison, Ernest Sutton, and Naim Scott -- Dahirai was a blatant racist who constantly made racist statements to them.  For example, Dahirai frequently called the African-Americans working for defendants "nigger" -- sometimes on a daily basis -- told them that they live in the projects and sold drugs, referred to blacks as only being good for drug dealers, and told Jones that he should go find him "a black girl so I can freak her for ten hours because you're all real cheap".  Dahirai also reportedly stated that he was "tired of working with you people," asked "[h]ow many kids do you have, like fifteen kids?," said "you people are poor," "you people are always broke," asked if blacks "shit in a bucket," if the black employees were high, how much money black girls charge

3

for sexual favors, and inquired whether "[y]ou know any black
prostitutes I can fuck?"  Id., Ex. B  6-8, 13; Ex. C  7-9, 15-16;
Ex. E  9-11; Ex. K at 56, 62, 67, 76.  Dahirai is said to have
made these derogatory statements on a weekly or daily basis.
Jones testified he heard Dahirai use the word "nigger" at least
four or five times.  Id., Ex. K at 62.

    Jones complained to Dobson about Dahirai's racist
remarks on many occasions, and Dobson told Jones that he would
fix the problem, but Dahirai's behavior did not change.  Id. at
56-57, 59, 80-84.  Faison, Sutton, and Scott attested that Dobson
was aware of Dahirai's treatment of the black employees, but did
nothing to reprimand or discipline Dahirai.  Id., Ex. B ¶ 13; Ex.
C ¶ 16; Ex. E ¶ 16-17.

    On April 6, 2010, Jones was working on a house in the
Chestnut Hill area in Philadelphia.  Id., Ex. K at 86-87.  He
left for lunch and when he returned he received a phone call from
Melissa in the Food For All office informing him that his son's
school had called and Jones had to leave work.  Id. at 87.
Melissa asked him if he wanted to leave and Jones said yes and
left.  Id.

    When Jones returned to work on April 7, 2010, Dobson
did not mention the fact that Jones had left work early the day
before.  Id.  Dobson held the regular morning meeting that Jones,

4

Sutton and Faison attended.  Id. at 91.  When the meeting was over, they each left to meet at the stables.  Id., Ex. L at 128. Jones pulled around to the stables in a golf cart.  Id., Ex. K at 93.  As Jones drove the cart up to the stables, Dahirai began cursing at Jones and walking toward him.  Id. at 87.  When Dahirai was close to Jones, he spit in his face.  Id.  Then Dahirai picked up a shovel and motioned as if he was about to hit Jones with it.  Id. at 88.  Dobson observed this exchange, and Jones said, "Dobson, did you just see him just spit in my face, cuss me out and I thought he was going to hit me with a shovel." Id.  Mr. Dobson responded, "You shouldn't have been sitting down. You should have been doing some work."  Id. at 104.

Jones worked only a half day on April 7, 2010 because he had already asked for, and received, permission to leave early to pick up his son's report card from school.  Id. at 109-10. That night, Jones informed Dobson that he would not be coming into work the next day because he intended to go to the police station to press charges against Dahirai.  Id. at 88.  At the police station Jones learned that the police would only be able to charge Dahirai with a misdemeanor, and Jones decided not press charges.  Id. at 112.  The following day, Jones went to the office to collect his check where he also received his termination letter.  Id. at 89.

5

Dobson claims that he did not fire Jones because of the incident with Dahirai, but that the incident inspired him to create a negative absence calendar on April 7, 2010 for Jones. Id., Ex. L at 163-164.  Dobson testified that Jones missed work thirty-five times between October of 2009 and April of 2010. Def. MSJ, Ex. C.  Dobson also knew by April 8, 2010 that Jones had threatened to file a lawsuit.  Pl. Resp., Ex. L at 156:6-7 ("This isn't a reason to come to work -- I don't know if it's a valid excuse that you want to file a lawsuit -- that you don't show up at work").  Dobson claims that after deliberating for two days after he saw the absence calendar, he decided to let Jones go for "excessive absenteeism."  Id. at 157.

## II.  **Analysis**[2]

---

[2] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
  The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)).  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  It is not enough to discredit the moving party's evidence, the non-moving party is also required to "present affirmative evidence in order to defeat a properly

6

Defendants move for summary judgment against Jones on all counts of the complaint, claiming that he cannot demonstrate a genuine issue of material fact to support his claims that defendants discriminated against him because of his race, retaliated against him for engaging in protected activity, or fostered a hostile work environment.  Def. MSJ at 8.  Jones responds that defendants' behavior is such an extreme example of all three forms of discrimination that summary judgment is unwarranted on any of his claims.

Because federal courts apply the same test to 42 U.S.C. § 1981 race discrimination claims as they do to Title VII claims, our analysis under § 1981 is the same as it would be under Title VII.  Whitmire v. Kvaerner Phila. Shipyard, 340 F. App'x 94, 98 n.1 (3d Cir. 2009) (citing Jones v. School District of Phila., 198 F.3d 403, 410 (3d Cir. 1999)); McKenna v. Pacific Rail Serv., 32 F.3d 820, 826 n.3 (3d Cir. 1994).

## A.   Race Discrimination

---

supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257.  A proper motion for summary judgment will not be defeated by merely colorable evidence or evidence that is not significantly probative.  See Liberty Lobby, 477 U.S. at 249-50. "[T]he burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Jones's claims are governed by the familiar burden-shifting framework ordained in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992). To make his claim of race discrimination, Jones must first establish a prima facie case of discrimination.  The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802.  Finally, the plaintiff has an opportunity to prove by a preponderance of the evidence that the employer's nondiscriminatory reason is pretextual.  Id. at 804; Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

The McDonnell Douglas framework "serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of whether the defendants intentionally discriminated against the plaintiff.  Burdine, 450 U.S. at 253. In other words, that framework helps courts determine whether unlawful discriminatory reasons motivated an employer to take an action against an employee.

Defendants have moved for summary judgment on Jones's race discrimination claim. To establish a prima facie case for such a claim, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the position he held; (3)

8

suffered an adverse employment action (4) under circumstances that raise an inference of discriminatory action.  Sarullo v. U.S Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  Under the fourth prong, a plaintiff can meet his burden either by demonstrating that he was (1) replaced by a person outside his protected class or (2) treated less favorably than someone outside of his protected class.  Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353-54 (3d Cir. 1999).

Although courts often use these factors, they do not constitute a rigid formula.  E.E.O.C. v. Metal Service Co., 892 F.2d 341, 347 (3d Cir. 1990). More generally, Jones can establish his prima facie case by offering "sufficient evidence . . . such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons."  Id. at 348. The burden-shifting framework, beginning with the prima facie case, offers the plaintiff an indirect way to prove that the employer acted because of unlawful discriminatory reasons.  Causation is thus the central question of the prima facie inquiry.  See Sarullo, 352 F.3d at 798. Under the McDonnell Douglas framework, "a prima facie case ... raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."

9

Pivirotto, 191 F.3d at 352 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). In other words, the McDonnell Douglas burden-shifting scheme is intended to locate a causal connection -- which Jones must prove -- between impermissible behavior toward him and his termination.   See Sarullo, 352 F.3d at 798.

Defendants concede the first three factors of the test for the purposes of their motion, i.e., that (1) Jones is a member of a protected class, (2) who was qualified for his position as a laborer, and (3) his termination was an adverse employment action.   Def. MSJ at 9.   The only remaining issue left at this stage of the inquiry is whether Jones has shown that "similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of [his] termination give rise to an inference of discrimination." Red v. Potter, 211 Fed. Appx. 82, 83 (3d. Cir. 2006). In their motion for summary judgment, defendants contend that Jones has not met his burden because although he has made allegations concerning Dahirai's racial bias, Dahirai's conduct as an independent contractor is not enough to hold defendants liable.

Jones contends that Dahirai is an employee of defendants, not an independent contractor, and that Dahirai both contributed to the firing decision and that an employer is liable

10

for discrimination against an employee for acquiescing,
condoning, or for ratifying racial discrimination of its own
employees or of independent contractors.  Pl. Resp. at 42-48.
The Supreme Court has adopted a common-law test for determining
whether one is an employee or an independent contractor.
<u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 323-24 (1992).
Under <u>Darden</u>, courts may consider the following non-exhaustive
factors:

> the hiring party's right to control the
> manner and means by which the product is
> accomplished . . .the skill required; the
> source of the instrumentalities and tools;
> the location of the work; the duration of the
> relationship between the parties; whether the
> hiring party has the right to assign
> additional projects to the hired party; the
> extent of the hired party's discretion over
> when and how long to work; the method of
> payment; the hired party's role in hiring and
> paying assistants; whether the work is part
> of the regular business of the hiring party;
> whether the hiring party is in business; the
> provision of employee benefits; and the tax
> treatment of the hired party.

<u>Id.</u>  Because the common law test contains "no shorthand formula
or magic phrase that can be applied to find the answer . . . all
of the incidents of the relationship must be assessed and weighed
with no one factor being decisive."  <u>Id.</u> at 324 (internal
quotation marks omitted).

Jones and three other employees testified that (1)
Dahirai ran defendants' entire business, (2) employees reported

11

directly to Dahirai, (3) they were told that he was their
supervisor, (4) they were told to follow all directions given by
Dahirai, (5) Dahirai supervised employees at all of defendants'
properties, and (6) had the power to send Jones home and
exercised that power.  Pl. Resp., Ex. K at 32, 55-56; Ex. B  13;
Ex. C  16; Ex. E  9.  Dobson testified that Dahirai works every
day for defendants from 7 a.m. to 5 p.m. and that he is paid flat
rates that do not differ for each day worked.  Id., Ex. L at
40-42.  Dahirai has also worked a set schedule for defendants
every day of the week for nearly five years, and he works
exclusively for defendants.  Id. at 43; Id., Ex. N at 12.
Dahirai worked on average forty hours per week.  Id., Ex. N at
12-13.  Dahirai threatened to terminate Jones's employment and
other employees' employment on multiple occasions.  Id., Ex. K at
58.  Dahirai testified that he was personally responsible for
reporting progress of work to Dobson.  Id., Ex. N. at 26-27.
Although Jones admits that defendants pay Dahirai by IRS Form
1099, he also submits evidence that defendants pay all of their
staff this way.  Id., Ex. M at 10-11 (deposition of Wendy Young
explaining that she is a full-time employee who is paid hourly
despite the fact that her pay is recorded by IRS Form 1099).

Thus, we find that under <u>Darden</u> Dahirai is an employee of defendants and not an independent contractor.[3]  Defendants argue that even if we consider Dahirai to be an employee of defendants, the racist remarks that he made are insufficient to satisfy Jones's burden here because stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made at times remote from the date of the decision.  Def. MSJ at 10.  This reading of the facts is too crabbed.  In the first place, remarks on a daily -- or even a weekly -- basis are not "stray," and even if defendants are correct that Dahirai made his last racist statement less than three months before defendants terminated Jones, such a delay is not "remote."  Certainly, firing Jones two days after he threatened to file a lawsuit defines "temporally proximate."

Jones also presents evidence that he was given more difficult work assignments than his non-black counterparts.  He notes that although he regularly complained about Dahirai's racist statements and behavior to Dobson, Dobson never

---

[3]Even if we had found that Dahirai was an independent contractor, this finding would not have insulated defendants from liability. "[W]hen the source of the alleged harassment is a co-worker, a plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action." <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 427 (3d Cir. 2001).

disciplined Dahirai or even addressed the problem.  Pl. Resp. Ex. K at 56-57, 59, 81, 85-86.

An employer will be liable for the harassing conduct of the alleged victim's co-worker if the employer was "negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment." Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) (citing Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 106 (3d Cir.1994)). An employer is negligent if it "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." Andreoli, 482 F.3d at 644 (internal quotation marks omitted).  "Even if the remedial action does not stop the alleged harassment, it is adequate if it is reasonably calculated to end the harassment." Id. (internal quotation marks omitted).  A remedial action that stops the harassment is adequate as a matter of law. Knabe v. Boury Corp., 114 F.3d 407, 411 n.8 (3d Cir. 1997); see also Weston, 251 F.3d at 427 (no liability where employer action stopped the harassment).

We find that Dahirai's treatment of Jones raises an inference of discriminatory action, that Dahirai is an employee of defendants, and that defendants failed to address his harassing conduct.  Jones has therefore made a prima facie case of racial discrimination.  Thus, the burden shifts to defendants

to articulate a non-discriminatory reason for terminating
plaintiff.

In their motion for summary judgment, defendants fail
to argue that they had a non-discriminatory reason for
terminating Jones with regard to his race discrimination claim.
But even giving defendants the benefit of the doubt that their
proffered non-discriminatory reason for firing Jones was his
"extreme absenteeism," we find ample evidence of pretext given
that defendants terminated Jones one day after he threatened to
file a lawsuit against them based on Dahirai's behavior toward
him, and only created a negative absence calendar after he
threatened to file such a lawsuit.  Pl. Resp., Ex. L at 163-164.
Thus, we find that a reasonable fact-finder could readily either
disbelieve the employer's proffered justification or believe that
an invidious discriminatory motive was more likely than not a
motivating or determinative cause of the employer's action.
Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Jones has, in short, established a genuine issue of
material fact as to whether defendants discriminated against him
based on his race.  We will therefore deny defendants' motion for
summary judgment with regard to Jones's race discrimination
claim.

15

We now turn to defendants' motion for summary judgment as to Jones's hostile work environment claim.

B.  **Hostile Work Environment**

Jones alleges that he was the victim of a hostile work environment.  Regarding this claim, the same standard under Title VII applies under § 1981.  Verdin v. Weeks Marine, Inc., 124 F. App'x 92, 96 (3d Cir. 2005).  In order to state a prima facie claim under § 1981 for hostile work environment, an employee must show that (1) he suffered intentional discrimination because of his protected class, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, (4) the discrimination would have detrimentally affected a reasonable person in like circumstances, and (5) a basis exists for employer liability.  Andreoli, 482 F.3d at 643.

The only prong of this test that defendants challenge is the second -- that the discrimination was pervasive and regular.  Def. MSJ at 10.  In determining the existence of a hostile work environment, courts look to all the circumstances -- including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance.  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The employee's perception of a hostile environment must be subjectively felt and objectively reasonable.  Id. at 787.  "When the workplace is permeated with

17

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 78 (1998) (internal quotation marks omitted).

While they should never be condoned, "[r]acial comments that are sporadic or part of casual conversation do not violate Title VII." <u>Al-Salem v. Bucks Cnty. Water & Sewer Auth.</u>, No. 97-6843, 1999 WL 167729, at *5 (E.D. Pa. Mar. 25, 1999) (internal quotation marks omitted). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110-11 (2d Cir. 1997) (internal citations and quotation marks omitted).

Jones argues that there are four actions on the part of the defendants that constitute sufficient evidence of a hostile work environment: (1) continuous racially discriminatory statements, (2) disparate work assignments, (3) Dahirai's physical assault, and (4) inappropriately being sent home from work.  Pl. Resp. at 21-22.

18

We agree with Jones.  Viewing the facts in the light most favorable to him, Jones has submitted evidence that in only ten months Dahirai (1) called him a "nigger" directly on at least four or five occasions, (2) used this epithet "constantly," (3) made a series of racist comments on a weekly, if not daily, basis, (4) spit in his face and threatened to assault him with a shovel, (5) favored Jones's  Caucasian co-worker with easier tasks, and (6) sent Jones home inappropriately from work.  Jones testified that working with Dahirai was

> hard.  Like it's hard trying to do the job
> when you've got somebody constantly either
> talking down to you, calling you racist
> names, calling you niggers and asking you
> where you all live.  He said you all live in
> -- probably in the projects with all these
> kids selling drugs.  He's [sic] say something
> like you people ain't good enough and all you
> do is sell drugs.  He would say . . . can you
> all go find me a black girl so I can freak
> her for ten hours because you're all real
> cheap.  I'm tired of working with you people.
> And by the same token you're still trying to
> do your job.  And you would let David Dobson
> know, he's not going to keep talking to me
> the way he keep talking to me.  Dobson would
> say I'm going to handle . . . it.  Nothing
> will get done about it.  Next day he comes
> into work, okay, you work with Happy Hands
> again and you have to put up with the same
> talk again, talking about you're all bums,
> you all live in the projects. . . . you all
> have 15 kids.  I'm tired of working with you
> people.  He was just real, real racist.  He
> would constantly use nigger[,] he would
> constantly say you people and it was crude.

19

Pl. Resp., Ex. K at 56-57.  In light of these facts, a reasonable fact-finder could conclude that Dahirai did not make "sporadic" racial slurs, but rather kept up a "steady barrage of opprobrious racial comments."  <u>Schwapp</u>, 118 F.3d at 110.  Similarly, a reasonable fact-finder could conclude that Dahirai's behavior was racist in nature and was frequent, severe, physically threatening and humiliating, and that it interfered with Jones's work performance.

As defendants only challenge whether Jones can meet the second prong of the hostile work environment claim, we have found that a reasonable fact-finder could conclude that the discrimination was pervasive and regular.  In addition, we find that a fact-finder could reasonably conclude that defendants' reason for terminating Jones was pretextual.  We will thus deny defendants' motion for summary judgment with regard to Jones's hostile work environment claim.

Finally, we turn to Jones's retaliation claim.

## C.   <u>Retaliation</u>

Jones alleges that he engaged in protected activity, <u>i.e.</u>, complaining of racial discrimination, and that defendants retaliated against him by firing him.  Compl. ¶ 24.  The Supreme Court has held that retaliation claims are cognizable under § 1981 despite the absence of specific statutory language.  <u>CBOCS</u>

West, Inc. v. Humphries, 553 U.S. 442, 451 (2008).  Our Court of Appeals has held that the legal standards for a retaliation claim under § 1981 are the same as those applicable to a Title VII retaliation claim.  See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action either after or contemporaneously with the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action.  Red, 211 F. App'x at 84.

        Defendants concede that Jones engaged in protected activity and that he suffered an adverse employment action when they fired him, but argue that he cannot show a causal link between his reporting of Dahirai's conduct to Dobson and his termination.  Def. MSJ at 12.  But defendants do not explain why they believe Jones has not shown a causal link. Defendants contend that even if Jones can establish that link, they have proffered Jones's absenteeism as a legitimate reason for his termination.  Id.

        To show a causal link between protected activity and an adverse employment action, a plaintiff must show unduly suggestive temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct, or that

21

simply by viewing the proffered evidence as a whole it raises the inference of retaliation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).  "Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." Id. at 280-81.

Here, Jones testified that the last time he remembers complaining about Dahirai's racist comments to Dobson was in January of 2010.  Pl. Resp., Ex. K at 129.  Defendants terminated Jones in early April of that year.  Thus, at the most, a little more than three months elapsed between Jones's complaining about Dahirai's discriminatory behavior and his termination. Defendants also terminated Jones within two days of his threat to file a lawsuit.  Id., Ex. L at 156:6-7.

In addition to these circumstances, we also consider Dahirai's pervasively racist statements and behavior and Dobson's disregard for Jones's legitimate concerns -- which he brought several times to Dobson's attention.  While three months alone may not be enough to infer retaliatory behavior on defendants' part, drawing all inferences in favor of Jones, and considering the proffered evidence as a whole, we conclude that a fact-finder

could reasonably find that defendants retaliated against Jones for complaining about Dahirai's racist behavior by firing him. Thus, we find that Jones has made a <u>prima facie</u> case of retaliation.

Defendants claim that their legitimate reason for terminating Jones was his absenteeism.  Def. MSJ at 12.  But once again, we find that a fact-finder could reasonably either disbelieve the employer's justification or believe that an invidious discriminatory motive was more likely than not a motivating or determinative cause of the employer's action.  We will therefore deny defendants' motion for summary judgment with regard to Jones's retaliation claim.

**III.  <u>Conclusion</u>**

Because Jones has established his <u>prima facie</u> case for each of his claims and has proffered evidence from which a reasonable fact-finder could conclude that defendants' reason for his termination was pretextual, we will deny defendants' motion for summary judgment.

BY THE COURT:

\_\_\s\Stewart Dalzell